*983 OPINION OF THE COURT
Ariel E. Belen, J.
The petitioner Arash Salour was employed for one year at respondent Methodist Hospital as a pediatric resident. Early evaluations rated his performance as generally below average. About five months into this residency year, he was advised that he would not be allowed to return for his second year of residency. Nevertheless, the hospital continued to keep him on staff as a medical resident for the balance of the year.
At the end of his residency year, petitioner was advised for the first time that he would not receive academic credit. The question presented in this CPLR article 78 petition is whether a hospital can deny a medical resident academic credit without formal notice and an opportunity to be heard based on evaluations that while below average never indicated his work was unacceptable. Both due process considerations and the collective bargaining agreement governing this employment relationship do not support this result.
Petitioner Arash Salour brought this CPLR article 78 action to compel respondents to grant him academic credit for the year that he worked as a resident in the Department of Pediatrics at respondent New York Methodist Hospital. Respondents allege, inter alia, that this action cannot be heard because petitioner failed to exhaust his administrative remedies. The relationship between the parties was governed at the time by the collective bargaining agreement between New York Methodist Hospital and the Committee of Interns and Residents for the period between September 1, 1996 to August 31, 1998.
If petitioner had brought this action to contest Methodist’s decision not to renew his contract, respondents would be correct in their assertion that petitioner was obliged to exhaust his administrative remedies and follow the procedures outlined in the collective bargaining agreement for filing a grievance. This is because the collective bargaining agreement specifically lists termination to be a grievable event. Petitioner, however, has made it abundantly clear that he is not contesting the non-renewal of his contract but instead demands that respondents grant him the academic credits that he earned by working as a pediatric resident for a full year.
Methodist has not supplied any reason for its determination to deny petitioner his credits nor has Methodist submitted any documentation of its policies regarding the requirements for *984 obtaining academic credit upon completing a year of residency. The collective bargaining contract makes no reference to any particular procedure to be followed in the event that there is a dispute about denial of credits. The contract does, however, provide for procedures to be followed prior to the imposition of any disciplinary action against a housestaff officer. These procedures are separate and distinct from the procedures for filing a grievance in the event of termination.
In its responsive papers, Methodist refers to the evaluations of petitioner’s work and the grades that he received and annexes these documents to its responsive papers. A review of those evaluations indicates that Dr. Salour’s work was rated as “good” or “below average” in most of the categories listed. It is clear from these evaluations that in general his work was determined to be less than satisfactory.
Nowhere, however, was Dr. Salour’s work rated “unacceptable”, which would be the apparent correlative to failure. Since the rating scale on these evaluations ranged from “outstanding” to “unacceptable,” it cannot be said that petitioner was ever put on notice that the quality of his work would lead to a total denial of academic credit. Methodist has not presented any evidence that it has a policy whereby residents whose grades are essentially Cs and Ds cannot expect to receive credit for their work, despite passing, albeit marginally. Nor has Methodist demonstrated that Dr. Salour was advised at any time prior to his completion of his residency year that although he obtained passing grades, he might not receive his academic credits.
Respondents urge that the court defer to the decision made by Methodist in this matter citing the established principle that “public policy compels judicial restraint where academic decisions of educational institutions are challenged” (Washington v Bernard M. Baruch [City Univ] Coll., 221 AD2d 163 [1st Dept 1995], citing Gertler v Goodgold, 107 AD2d 481, 485, affd 66 NY2d 946). Further, defendant urges that this court is limited in its review of the determination of an academic institution to the question of whether such determination was arbitrary and capricious, irrational, made in bad faith or contrary to the Constitution or statute, citing Matter of Rafman v Brooklyn Coll. (212 AD2d 795 [2d Dept 1995]; see also, Auguste v New York Hosp. Med. Ctr., 260 AD2d 589 [2d Dept 1999]).
While the courts have stated that judicial review of the determinations of educational institutions regarding a student’s *985 academic performance is limited to whether such determination was arbitrary and capricious, a court must have a record from which it could conclude that the decision to dismiss the student was not irrational. In the instant case, no basis has been given by the hospital administration to explain or justify its determination to deny petitioner academic credit for the year he completed.
Methodist has not provided any explanation for failing to credit the petitioner for completing his first year of residency, although they allowed him to treat patients and complete his year of residency there even after determining that his residency would not be renewed. Without advising petitioner that his academic work was unacceptable, Methodist continued to use petitioner’s services. Denying him credit at this stage severely prejudices the petitioner in his ability to continue his education. Indeed, the petitioner will not qualify for licensing as a physician in New York without a year of residency.
In Matter of Pell v Board of Educ. (34 NY2d 222 [1974]), the Court of Appeals held that a court must determine if the actions of the administrative body had a “rational basis” and this must be judged on the grounds stated by the agency at the time of its determination. This court simply has insufficient facts from which it can determine if Methodist had a rational basis for its determination to deny petitioner credit for his work after allowing him to treat children at the hospital for a full term. Respondent’s apparent reliance upon petitioner’s performance evaluations to support its decision to deny credit is untenable since these evaluations while marginal were passing and there is no evidence that maintaining an undistinguished but passing academic record would lead to denial of academic credit.
Although the agreement is silent on the issue of academic credit, the agreement does contain a provision relating to doctor discipline, article xvii of the parties’ collective bargaining agreement indicates that: “there shall be no dismissal, discipline or fine assessed against a House staff Officer except for just cause and pursuant to the procedures herein provided”. The procedures outlined in this article of the collective bargaining agreement further provide that the hospital must give written notice of the charges and contemplated disciplinary action and set a time and place for an internal disciplinary hearing.
While it is not clear that a denial of academic credit was specifically intended to be considered a disciplinary action against a student, it is difficult to see how it could be character *986 ized as anything else. The denial of academic credit is arguably the most severe form of academic discipline imaginable. No other sanction against a student short of expulsion could have as significant an impact upon that student’s future in the medical profession. It seems unlikely, that the parties to the collective bargaining agreement intended that a student doctor be completely without recourse to protest a decision to deny academic credit.
In light of the foregoing, and in view of the fact that petitioner was given no opportunity to be heard upon receiving this most serious disciplinary sanction from the hospital administration, this matter is remanded to the hospital for the purpose of scheduling and conducting a hearing as requested pursuant to article xvii of the collective bargaining agreement between New York Methodist Hospital and the Committee of Interns and Residents for the period September 1, 1996 to August 31, 1998.